IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MATTHEW S. JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:09cv00452 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATIONS

Plaintiff Matthew S. Jordan ("Jordan") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). On appeal, Jordan contends that the ALJ erred by failing to give controlling weight to the opinion of his pediatrician, Dr. Timothy Walker. Jordan also argues that the ALJ improperly assessed his credibility and complaints of pain. Having reviewed the administrative record and considered the arguments of counsel, the undersigned concludes that the ALJ's decision is supported by substantial evidence. Dr. Walker's treatment notes do not support his opinion as to Jordan's functional limitations. The undersigned finds no reason to disturb the ALJ's credibility assessment given Jordan's testimony as to his activities as a full time college student and the lack of record evidence to support the degree of limitation he claims. As such, it is **RECOMMENDED** that plaintiff's motion for summary judgment (Docket #11) be **DENIED**, and that the Commissioner's motion for summary judgment (Docket #13) be **GRANTED**.

# I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Jordan was born in 1988, (Administrative Record, hereinafter "R." 13), and is considered a "younger individual" under the Act. 20 C.F.R. § 416.963(b). He suffers from fibrous

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

dysplasia of the right upper femur and a shepherd's hook deformity, which have required multiple surgeries. Jordan graduated from high school and at the time of the ALJ's opinion was enrolled in the University of Virginia's pre-med program as a second year student. (R. 12, 21.) Jordan has no past relevant work. (R. 13.) He received SSI as a child, but benefits were terminated due to excessive income. (R. 42, 130.)

Jordan filed his own application for SSI benefits on February 20, 2007, alleging disability as of September 19, 1992. (R. 8.) His application for benefits was rejected by the Commissioner initially based on a medical records review by Donald Williams, M.D. (R. 244.) This decision was confirmed on reconsideration based on medical records reviews by Robert McGuffin, M.D. (R. 257.) An administrative hearing was convened before an ALJ on November 4, 2008, at which Jordan was represented by counsel. (R. 15-49.)

The ALJ found that Jordan's fibrous displaysia of the right proximal hip and shepherd's hook deformity qualify as severe impairments pursuant to 20 C.F.R. § 416.920(c). (R. 10.) Nevertheless, the ALJ determined that Jordan has the RFC to perform a range of sedentary work, including lifting/carrying up to twenty pounds occasionally and ten pounds frequently, standing/walking with normal breaks for a total of two hours in an eight hour day, and sitting with normal breaks for a total of six hours in an eight hour day. (R. 11, 45.) The ALJ also found Jordan to be limited in his ability to push/pull with the lower extremities, and noted Jordan should avoid hazards; never climb ladders, ropes or scaffolds; and only occasionally balance, stoop, kneel, crouch, crawl and use ramps/stairs. (R. 11.) The Vocational Expert testified at the administrative hearing that there are a significant number of jobs in the national economy that Jordan can perform with this RFC. Thus, the ALJ held that Jordan is not disabled under the Act.

(R. 13-14.) The Appeals Council denied Jordan's request for review and this appeal followed. (R. 1-3.)

### III

Jordan argues on appeal that the ALJ should have given greater weight to the opinion of his pediatrician, Timothy Walker, M.D., as to Jordan's functional limitations. Dr. Walker filled out a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on August 28, 2008. (R. 338-41.) On this form, he opined that Jordan can lift and carry twenty pounds frequently, stand and/or walk less than two hours in an eight hour day, and sit less than two hours in an eight hour day. (R. 339.)

Jordan claims that as a treating physician, Dr. Walker's opinion is entitled to great weight. Indeed, a treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); Social Security Ruling ("SSR") 96-2p.

In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

The ALJ considered Dr. Walker's opinion but declined to give it controlling weight, noting Dr. Walker's treatment records are unremarkable and that Jordan's daily activities as a full time college student exceed the limitations set forth by Dr. Walker. (R. 12.) Substantial evidence supports the ALJ's decision not to give Dr. Walker's opinion great weight. Although Dr. Walker is Jordan's treating pediatrician, at the time he rendered his opinion as to Jordan's functional limitations, he had not seen Jordan in nearly eighteen months. At that last appointment on March 24, 2006, Jordan complained of sinus problems, not issues related to his fibrous dyplasia. (R. 215.) In fact, there are only six treatment records from Dr. Walker in the administrative record. Three of those records document Jordan's complaints of sinus pain, congestion, sore throat, and fever. (R. 215, 216, 217.) Two are well check-up records that reference his fibrous displaysia but show normal examinations. (R. 197.) One record is a school excuse Dr. Walker wrote on October 17, 2002, as a result of a wound infection Jordan suffered from following his last surgery. In this school excuse, Dr. Walker notes only that Jordan should be allowed to decrease his trumpet use if he feels ill. He set forth no other limitations. (R. 191.)

There is simply nothing in Dr. Walker's records to support his determination that Jordan can stand and/or walk for less than two hours and sit for less than two hours each day.

As Jordan's pediatrician, Dr. Walker does not treat Jordan for fibrous dysplasia. Rather, Jordan is treated for this condition by a pediatric orthopedist, Mark Abel, M.D., at the University of Virginia Health System. There are a number of records from Dr. Abel dating back to 1999. Many of them are diagnostic studies and operative reports. None suggests that Jordan is disabled from all work. The only opinion Dr. Abel gives as to Jordan's physical limitations is in a letter dated July 15, 2003. Dr. Abel noted that Jordan's fibrous dysplasia "weakens his right femur and limits his endurance in physical activities. Matthew enjoys sports but will have reduced endurance for running sports and sports requiring repetitive impact loading." (R. 277.) Dr. Abel restricted Jordan from playing contact sports but stated he could swim, use the stationary bicycle, lift weights from a seated position, shoot basketball or play softball. (R. 277.) Other treatment notes from Dr. Abel on June 18, 2004 reveal no progression of the fibrous dysplasia, state that Jordan is not having any trouble, and note that he should return to see Dr. Abel on an annual basis. (R. 266.) On June 17, 2005, Dr. Abel stated Jordan's condition had stabilized with an intramedullary rod and screws, and that Jordan was to continue with a regular program of exercises and stretching. (R. 261.) At a visit on June 16, 2006, Dr. Abel noted Jordan was weaker and approximately 2 cm shorter on his right side. (R. 249.) But Dr. Abel recommended Jordan be evaluated to determine his suitability for a driver's license and told him to follow up on an as needed basis. Nothing in Dr. Abel's notes suggests that Jordan is limited to standing/walking less than two hours and sitting less than two hours each day as stated by Dr. Walker. Nor are there records from any other physician that support this degree of functional limitation.

At the administrative hearing, Jordan testified that he cannot stand more than thirty minutes at a time, cannot sit more than thirty minutes at a time, and has to lie down up to nine times per day. (R. 35, 36, 41.) The ALJ determined that Jordan's statements concerning the limiting effects of his symptoms were not credible. (R. 12.) The undersigned finds no reason to disturb the ALJ's credibility determination in this case. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

The degree of limitation alleged by Jordan is inconsistent with his daily activities as a college student. Jordan is able to endure the rigors of a full 14-hour course load in the pre-med program at the University of Virginia, with a goal of one day becoming an orthopedic surgeon. (R. 23-24.) He is able to attend three and a half hours of class during the day and study as long as necessary to maintain his coursework. In addition, he participates in various pre-medical honor societies and associations and mentors disabled children in the Charlottesville community. (R. 23.) While he does receive accommodations such as centralized housing, taxi service around grounds, extra time to complete exams, and an elevator key, he does not always take advantage of them. For instance, Jordan testified that often sits in the regular stands during football and basketball games, instead of in handicapped seating (R. 37), and he sometimes walks to class. (R. 42.) Jordan testified that during his three-hour biology lab, he does not have to sit the entire time; he is able to get up and walk around. (R. 29.) Simply because Jordan has an opportunity to stand up and move during long classes and exams, however, does not mean that he is unable to sit for six hours during the day with normal breaks, as the ALJ determined. No doctor has put such restrictions on him.

In fact, the record shows little in the way of restrictions on Jordan's physical activities. In secondary school, Jordan was restricted from participating in contact sports, had to sit in a chair or on a stool instead of flat on the ground, received an extra set of books to keep at home, and was limited from certain activities in his physical education class. (R. 186, 188-89.) At certain times following surgery, a few additional accommodations were added. Jordan was given slightly more time between classes, received assistance carrying his band instrument, and was excused from participating in physical education. (R. 190, 224.) He was able to take standardized tests under routine conditions without accommodations, however, and was encouraged to participate in school activities and sports as he was able. (R. 186, 188, 189.) Dr. Abel stated Jordan could even shoot baskets and play softball, so long as he did not risk collision with other players. Records reveal Jordan played in the pit in the marching band and participated in scouts and baseball. (R. 34-35, 197.) He indicated on his disability application that he cooks, shops with his family and is able to mow the flat part of his mother's yard. (R. 134.) While he has not obtained a driver's license, a report from an occupational therapist who evaluated his ability to drive indicates that he is a feasible candidate for a license. (R. 206.) Jordan has an orthotic heel lift but does not use any other assistive devices regularly. He sees the doctor on an as needed basis and does not take prescribed medication, relying on over-the-counter ibuprofen for pain. (R. 26.)

In light of conflicting evidence in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Jordan's subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an underlying

impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers.). Then, the ALJ must determine whether Jordan's statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

Substantial evidence supports the ALJ's credibility assessment. To be sure, Jordan has a chronic condition that is likely to cause him some pain and discomfort and limit certain aspects of his life. However, the objective evidence of record simply does not suggest that he is disabled from all employment. The ALJ considered the opinion of Dr. Walker but did not err in failing to give it greater weight. Instead, the ALJ properly relied on the opinions of the state agency physicians, who found Jordan could perform a range of sedentary work.

## IV

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In affirming the final decision of the Commissioner, the undersigned does not suggest that Jordan is free from all pain. However, the ALJ carefully considered and accounted for Jordan's physical condition in the disability decision, and that decision is plainly supported by substantial evidence. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. Accordingly, it is **RECOMMENDED** that the Commissioner's

decision be **AFFIRMED**, defendant's motion for summary judgment (Docket #13) be **GRANTED**, and Jordan's Motion for Summary Judgment (Docket #11) be **DENIED**.

The Clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

    Entered: March 3, 2011

    /s/ Michael F. Urbanski

    Michael F. Urbanski
    United States Magistrate Judge